**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CRIMINAL NO. RDB-26-31** |
| | * | |
| CARLOS AMADOR LOPEZ, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

**MOTION TO REVIEW AND REVOKE RELEASE ORDER AND**
**MOTION TO EXTEND STAY PENDING REVIEW**

The United States of America, by and through undersigned counsel, respectfully moves pursuant to 18 U.S.C. § 3145(a)(1), for *de novo* review and revocation of the March 12, 2026 Release Order issued orally in this case; and further moves to stay the March 12, 2026 Release Order pending *de novo* review by the District Court.

Pursuant to 18 U.S.C. § 3145(a)(1), the Government moves for revocation of a magistrate judge's order of release for the Defendant for the reasons provided below.  For the reasons stated below, in addition to other reasons that may be presented at the hearing, the Government submits that this Court should find the Defendant poses a serious risk of flight pursuant to Section 3142(f)(2)(A) of the Bail Reform Act of 1984 and revoke the prior order of release and hold a detention hearing.  *See* 18 U.S.C. § 3142(f)(2)(A).  Additionally, this Court should also detain the Defendant pending trial because "no condition or combination of conditions will reasonably assure the appearance of the [Defendant for future proceedings] and the safety of any other person and the community."  *Id.* at § 3142(e)(1); *see also id.* at § 3143(c).

1

## BACKGROUND

At an unknown date and time before April 25, 2018, the defendant, Carlos Amador Lopez ("Amador Lopez" or "Defendant"), entered the United States without inspection, admission, or parole by an Immigration Officer. On or about April 25, 2018, he was sentenced to 12 to 14 months by the District Court of Douglas County, Nebraska for Robbery, with credit for pre-trial detention. Subsequently, on May 2, 2018, the defendant was served with a final administrative removal order. He was removed on July 19, 2018 to his nature country of Honduras.

Subsequently, Amador Lopez re-entered the US without inspection and was encountered by Immigration Officials on January 6, 2021 in New Orleans. ICE Enforcement and Removal Operations ("ERO") issued the defendant a Notice of Intent/Decision to Reinstate a Prior Order, Form I-871, in violation of 241(a)(5) of the Immigration and Nationality Act, which the defendant acknowledged on January 6, 2021. The defendant was removed to Honduras for a second time on March 17, 2021.

Subsequently, Amador Lopez re-entered the US without inspection and was encountered by Immigration Officials on May 29, 2024 in New Orleans, Louisiana. ERO issued the defendant a Notice of Intent/Decision to Reinstate a Prior Order, Form I-871, in violation of 241(a)(5) of the Immigration and Nationality Act, which the defendant acknowledged on May 29, 2024. The defendant was removed to Honduras for a third time on June 27, 2024.

On or about December 31, 2025, the defendant was encountered by law enforcement in Halethorpe, Maryland. The defendant was placed under arrest. Fingerprint impressions were obtained from the defendant on December 31, 2025 and were electronically submitted to various law enforcement databases.

On January 7, 2026, Stephanie Fox, a Senior Fingerprint Specialist with the Homeland Security Investigations Forensic Laboratory ("HSI-FL"), performed a visual examination comparing the fingerprint impressions taken after the Defendant's arrest on December 31, 2025, with the fingerprint impressions taken in connection with the Defendant's prior arrests on May 1, 2018, January 6, 2021, and May 29, 2024. After conducting a comparative analysis of the friction ridge detail in spatial relationship to one another for these sets of fingerprints, Ms. Fox concluded that there were no explainable differences between the characteristics in question and identified these fingerprint impressions as being made by the same individual, *i.e.*, Defendant.

Following Defendant's prior deportation, there is no record that he ever obtained permission to reenter the United States from the Secretary for Homeland Security, the United States Attorney General, or any other authorized official.

## **PROCEDURAL HISTORY**

After this administrative arrest of the defendant, he was served with Form I-871, a Notice of Intent to Reinstate the Prior Order of Deportation. Amador Lopez was subsequently indicted by a grand jury of this District with one count of illegal reentry after aggravated felony conviction and removal, in violation of 8 U.S.C. §§ 1326a and (b)(2). The defendant is currently housed in the custody of the United States Marshal Service, and he has an administrative ICE detainer lodged against him.

On January 23, 2026, Defendant had his initial appearance before The Honorable Erin Aslan. ECF No. 5. Amador Lopez consented to detention. The Government provided defense counsel with discovery, and the Court set the relevant deadlines for motions, trial, and other proceedings. ECF No. 14. On March 6, 2026, Amador Lopez exercised his right to a detention hearing. The Honorable Charles D. Austin scheduled the hearing for March 12, 2026. At this

hearing, although stating it was a "close call," the Court ordered the Defendant released subject to certain conditions, namely, location monitoring based primarily on (1) lack of evidence that Defendant violated *judicial* orders as opposed to *administrative* orders, (2) sufficient ties to the jurisdiction, and (3) absence of evidence that he uses aliases or engaged in obstruction.  The Court orally stayed its release order until 3:00 pm on March 13, 2026 to allow the Government an opportunity to appeal.

**LEGAL STANDARD**

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release."  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).  On appeal, the question becomes "whether the evidence as a whole supports the conclusions of the proceedings below."  *Stewart*, 19 F. App'x at 48 (citing *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir.1987)).

Pursuant to the Bail Reform Act, there are four options for release or detention of a criminal defendant pending trial:

> (1) release on personal recognizance or upon execution of an unsecured appearance bond under 18 U.S.C. § 3142(b); (2) release on one or more conditions outlined in § 3142(c); (3) temporary detention to permit revocation of conditional release, deportation, or exclusion under § 3142(d); or (4) detention pursuant to § 3142(e).

*United States v. Reymundo*, 792 F. Supp. 3d 612, 618 (D. Md. 2025) (quoting *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1123 (N.D. Iowa 2018); *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 588 n.1 (E.D. Ky. 2023)).  The Bail Reform Act also establishes the following two-step process in determining whether or not to detain an individual before trial:

First, the government may move for pre-trial detention if the defendant has been

charged with certain enumerated offenses *or in a case that involves a serious risk that such person will flee*; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

*Reymundo*, 792 F. Supp. 3d at 618 (cleaned up). In determining whether to release a defendant pending trial, the Court must perform an individualized assessment of the defendant utilizing the factors enumerated in Section 3142(g) of the Bail Reform Act, which includes: (1) "the nature and circumstances of the offenses charged[;]" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

At a detention hearing, the government is permitted to "present information by proffer" and "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *United States v. Vane*, 117 F.4th 244, 250 (4th Cir. 2024) (quoting 18 U.S.C. § 3142(f)); *see also United States v. William*, 753 F. 2d 329, 331 n.7 (4th Cir. 1985) ("Evidentiary proffers are approved by 18 U.S.C. § 3142(f)."). If the defendant is released by order of a magistrate judge, the government "may file a motion for revocation of the order or amendment of the conditions of release for consideration by the presiding district judge." *Reymundo*, 792 F. Supp. 3d at 618 (quoting 18 U.S.C. § 3145(a)(1)) (ellipses omitted). "When the district court acts on a motion to revoke or amend a magistrate

judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citations omitted).

For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required. *See Stewart*, 19 Fed. App'x at 48 (citing *Rueben*, 974 F.2d at 586). Regarding the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings. *See Stewart*, 19 Fed. App'x at 48 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). A clear and convincing evidence standard applies to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Stewart*, 19 Fed. App'x at 48 (quoting *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985)).

The Bail Reform Act factors to be considered in this case, both separately and collectively, demonstrate that there is no condition or combination of conditions of release that will ensure the defendant's presence at future court proceedings.

## **DISCUSSION**

Considering the factual background of this case detailed above, and for the reasons set forth below, the Government argues that the Court's prior determination to release the Defendant was not supported by either the law or evidence proffered or presented. In this case, the Government seeks detention of the Defendant because he presents a serious risk of flight, and there are no

conditions of release that would reasonably assure the appearance of the Defendant in future proceedings as required in this matter.

## I.        Detention Hearing Is Warranted Because There Is a Serious Risk the Defendant Will Flee

Because the offense charged in this case is not among the offenses enumerated in Section 3142(f)(1), "a detention hearing would only be warranted upon the government's motion if the case involves a serious risk of either flight or obstruction of justice under § 3142(f)(2)." *Reymundo*, 792 F. Supp. 3d at 619.  "When proceeding based on a serious flight risk, 'the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk.'" *Id.* (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)).  "The standard requires showing that it is more likely than not that *a serious risk* of flight exists, *not* that it is more likely than not that the defendant will flee." *Reymundo*, 792 F. Supp. 3d at 619 (quoting *United States v. Perez-Vasquez*, 779 F. Supp. 3d 248, 256 (N.D.N.Y. 2025)) (brackets omitted).  "In deciding whether a case involves a serious flight risk, a court may consider: '(1) the defendant's incentive to flee, (2) the ability to flee, (3) ties to the jurisdiction and the United States, and (4) reliability and trustworthiness.'" *Reymundo*, 792 F. Supp. 3d at 619 (quoting *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *3 (E.D. Ky. Mar. 5, 2025)).  Notably, while the standards for a detention hearing (risk of flight) and detention itself (likelihood of non-appearance) are worded differently, they are commonly and appropriately considered and resolved at the same hearing. *See United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023).

A "serious risk of flight" under Section 3142(f)(2)(A) is "a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138

(D. Idaho 2023); *see also United States v. Hernandez-Us*, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025). "Flight does not solely refer to flight from this country. Flight covers the broader idea of flight from prosecution in this District." *Reymundo*, 792 F. Supp. 3d at 625 (quoting *United States v. Rodriguez-Rodriguez*, Crim. No. 25-175 (SRN/ECW), 2025 WL 1685830, at *3 (D. Minn. June 16, 2025)). Furthermore, the Court is also permitted to consider the fact that an illegal reentry case involves a citizen of a foreign country that has no right to enter or lawfully remain in the United States when assessing whether a defendant is a flight risk. *See Santos-Flores*, 794 F.3d at 1090. In this case, the Government is entitled to a detention hearing because the Defendant poses a serious risk of flight based on the fact that he: (i) has a strong incentive to flee the jurisdiction; (ii) has the ability to flee the jurisdiction; (iii) lacks substantial ties to Maryland; and (iv) has shown a history of voluntary conduct which undermines any confidence in his reliability and trustworthiness to comply with court orders.

    i.    **Amador Lopez's Pending Criminal Charge and Potential Removal from the United States Provides a Substantial Incentive to Flee the Jurisdiction.**

First, the Defendant has a strong incentive to flee this jurisdiction to avoid a sentence of imprisonment and a fourth deportation, which weighs in favor of finding that this case involves a serious flight risk. In this case, the weight of the evidence against the Defendant for violating 8 U.S.C. § 1326(a) and (b)(2) is "substantial and straightforward." *Reymundo*, 792 F. Supp. 3d at 624. The evidence provided to Defendant in discovery establishes each essential element of the offense that the Defendant was an alien who had been deported or removed from the United States subsequent to an aggravated felony, and thereafter, reentered, or was found in, the United States without having obtained the express of the Attorney General or the Secretary for Homeland Security to reapply for admission. *See* 8 U.S.C. § 1326(a), (b)(2).

Moreover, if this case results in a conviction, the Defendant "may reasonably expect a prison sentence" since he faces a maximum term of twenty years of imprisonment pursuant due to his prior aggravated felony conviction, even despite the Defendant's advisory sentencing guidelines falling to a significantly lower range (with the specifics depending on Probation's ultimate calculation).   Regardless, "[the Defendant's] exposure to a potential prison sentence within this range provides one incentive to flee." *Reymundo*, 792 F. Supp. 3d at 624 (citing *Rodriguez-Fuentes*, 2025 WL 711955, at *4 ("[T]he severity of potential punishment may influence a defendant's incentive to flee.")).   "The likelihood that [the Defendant] eventually will be deported again after serving any prison sentence imposed in this case gives him another incentive to flee prosecution." *Reymundo*, 792 F. Supp. 3d (citing *United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 692 (D. Md. 2025) ("[T]he existence of a pending detainer and forced removal may be relevant to the flight risk determination to the extent that the potential removal provides incentive to an individual able to flee."); *United States v. Nunez*, No. 4:25-CR-07, 2025 WL 875803, at *3 (E.D. Va. Mar. 20, 2025) (weighing "the threat of being involuntarily removed" strongly in favor of finding a flight risk); and *Rodriguez-Fuentes*, 2025 WL 711955, at *6 (citing removal order among incentives to flee)); *see also United States v. Neves*, 11 F. App'x 6, 8 (1st Cir. 2001) (finding the defendant had "a strong incentive to flee . . . to avoid the near-certainty of a prison sentence followed by deportation."); *United States v. Benitez-Elvira*, No. 1:14CR391-1, 2014 WL 6896142, at *2 (M.D.N.C. Dec. 5, 2014) ("Simply put, a significant incentive exists for the defendant to absent himself from further proceedings to avoid possible imprisonment followed by deportation.").

The existence of an ICE detainer also provides a motive for the Defendant to flee.  If the Defendant avoids ICE custody upon his release, he will have no incentive to remain in this

jurisdiction to face these federal criminal charges, where he faces a term of imprisonment based on his prior criminal history and statutory guideline range and potential deportation following his sentence. Similarly, if the Defendant is released and then deported to Honduras by ICE, there will be no incentive for him to return to the United States to face these federal criminal charges. *See, e.g.*, *Mejias-Mejias*, 771 F. Supp. 3d 688, 692 (D. Md. Mar. 18, 2025) (finding that "the existence of a pending detainer and forced removal may be relevant to the flight risk determination to the extent that the potential removal provides incentive to an individual able to flee"); *Rodriguez-Fuentes*, 2025 WL 711955, at *6 (E.D. Ky. Mar. 5, 2025) (noting that an ICE detainer is "one more factor weighing towards finding the United States established serious risk of flight by preponderance of the evidence"). Therefore, the fact that an ICE detainer exists in this case also weighs in favor of the Defendant's incentive to flee the jurisdiction.

### ii. The Defendant Has the Ability to Flee the Jurisdiction.

Second, the Defendant has proven he has the ability to flee based on the fact that he has four times illegally entered into the United States from Honduras to different U.S. states which displays he has "a long-standing capacity to travel significant distances, crossing several national and state borders each time." *Reymundo*, 792 F. Supp. 3d at 623 (reasoning that despite a lack of financial means, the defendant's travel over long distances demonstrated his ability to flee and his risk of flight). Moreover, "[a] district court cannot assume based solely on the existence of an immigration detainer that ICE will take *and maintain* custody of a criminal defendant until completion of their criminal proceedings." *Reymundo*, 792 F. Supp. 3d at 622 (emphasis in original). "In other words, the existence of an immigration detainer cannot be properly relied upon

to rebut the notion that a defendant may have an opportunity to flee prosecution upon release under the [Bail Reform Act]." *Id.*

### iii.    The Defendant Lacks Significant Ties to the Community.

Third, the Defendant's serious risk of flight is further evidenced by his lack of significant ties to Maryland.  Defendant is a citizen of Honduras, cannot legally work in the U.S., and has limited other ties to Maryland.  While his mother and two siblings live here, his infant child lives in Louisiana, and he is not married, nor is he with the mother of his child.  *See, e.g.*, *United States v. Aleman-Duarte*, 2020 WL 236870, at *5 (E.D. Tenn. Jan. 15, 2020) ("These facts reveal that the Defendant has limited ties to this community.  The Court also finds Defendant has no known financial resources, is not employed, and is unlikely to get a job, due to his status as an illegal alien.").

### iv.    The Defendant's Multiple Illegal Entries and Disregard of a Prior Removal Order Demonstrates the Court Cannot Trust the Defendant to Abide by its Orders.

Fourth, the evidence demonstrates the Defendant's lack of trustworthiness and disregard for legal orders.  As previously discussed, Amador Lopez is a native and citizen of Honduras and has illegally entered the U.S. four times, and was removed three times after previously being convicted of an aggravated felony and removed to Honduras in 2018.  During the course of the Defendant's prior removal, the Defendant was explicitly informed that he was not to return to the United States without authorization.  Rather than adhering to that mandate, the Defendant flippantly disregarded that instruction when he re-entered the United States multiple times, showing that he simply cannot be relied upon to follow court orders.

While Judge Austin accurately pointed out that Amador Lopez has not been shown to have specifically disregarded *judicial* as opposed to *administrative* orders, the Government submits that his refusal to follow administrative orders presents a serious risk that the Defendant will

11

voluntarily evade judicial oversight.  In fact, many courts have found that multiple unlawful entries into the United States "indicate[ ] a pattern of defying the United States' laws and court orders." *Nunez*, 2025 WL 875803, at *3 (reversing magistrate judge's order of release and detaining defendant with multiple prior removals); *see also Cobix-Espinoza*, 655 F. Supp. 3d at 596 (explaining that a "history of re-entering the country despite prior removals by court order indicate a propensity to ignore this Court's orders"); *United States v. Hernandez-Us*, 2025 WL 918695, at *9 (W.D. Pa. Mar. 26, 2025) (reversing magistrate judge's release order and finding defendant to be a serious risk of flight in part because an "alien defendant's illegal reentry into the United States after removal is indicative of his or her general disregard for the law and court order" (in parenthetical) (citation omitted)).

This Defendant's record also differs from other cases in the District of Maryland where defendants who faced immigration-related criminal charges were not deemed a serious risk of flight and released based on either a record of attending ICE proceedings or ongoing proceedings where the defendants were fighting their removal.  For instance, in *Mejias-Mejias*, the Court emphasized that the defendant had been "aware that ICE knew of his presence in the country," had an existing asylum petition, and a scheduled hearing date with ICE to resolve that petition which the court found "weigh against any serious intent to flee."  *Mejias-Mejias*, 2025 WL 846435, at *5.  Moreover, in *Mejias-Mejias*, the defendant was charged with illegal entry into the United States, i.e., the defendant did not disregard prior orders of removal.  Similarly, in *United States v. Hernandez Cerrato*, the defendant had an active petition in his immigration proceeding seeking protection from removal under the Convention Against Torture.  *See United States v. Hernandez Cerrato*, Crim. No. MJM-23-419, 2024 WL 1329296, at *2, *4 (D. Md. Mar. 28, 2024) (crafting a limited release order that released the defendant to ICE custody only to pursue his pending

immigration case).

Here, the Defendant offers a stark contrast given that he has neither a record of attending ICE proceedings nor ongoing proceedings where he is fighting his removal.  Unlike the defendants in *Mejias-Mejias* and *Hernandez Cerrato*, this Defendant has established no record of adhering to court or ICE appearances.  Thus, a key part of the justification for releasing the defendants in *Mejias-Mejias* and *Hernandez Cerrato* is notably absent from this case.  Instead, the evidence in this case not only shows the Defendant blatantly disregarded the orders related to his prior removals multiple times.

**II.      The Defendant Should be Detained Due to the Risk of Nonappearance and the Danger to the Community.**

The Bail Reform Act factors, applied both separately and collectively, demonstrate that there is no condition or combination of conditions of release that will reasonably ensure the Defendant's presence at future court proceedings and the safety of any other person and the community.

**i.      Nature and Circumstances of the Offenses Charged**

In this case, the Defendant was apprehended by ICE law enforcement officers after illegally reentering the United States multiple times, and after committing an aggravated felony as defined by 8 USC § 1101(a)(43)(G).  By its very nature, illegal reentry involves "returning to the United States despite prior removal from this country by court order" and reflects "that the Defendant is not disposed to follow the orders of this Court."  *United States v. Aleman-Duarte*, 2020 WL 236870, at *5 (E.D. Tenn. Jan. 15, 2020).  Furthermore, the defendant in this case has personally illegally entered the country four times.  And he was previously convicted of the aggravated felony of robbery before his first deportation.  "[M]ultiple unlawful entries into the United States" should

be among the "primary factors" in assessing a defendant's risk of flight. *Santos-Flores*, 794 F.3d at 1092.

### ii.    Weight of the Evidence

Here, significant evidence exists to establish the elements of the offense in this case. Specifically, there is extensive documentation, including expert fingerprint analysis, in his A-File showing that Amador Lopez: (i) was an alien at the time of apprehension; (ii) had previously been removed from the United States; (iii) thereafter was found to be voluntarily in the United States; (iv) had not received the consent of the Attorney General of the United States to apply for readmission to the United States; and (v) was previously convicted of an aggravated felony.

### iii.    History and Characteristics of the Defendant

Here, the history and characteristics of the Defendant also support the Government's position that the Defendant presents a significant flight risk considering: (i) the Defendant was previously convicted of robbery; (ii) Defendant is a citizen of Honduras and has limited ties to Maryland, e.g., while his mother and two siblings live here, his infant child lives in Louisiana, he is not married, nor is he with the mother of his child; and (iii) Defendant was previously removed from the United States to Honduras in 2018, 2021, and 2024.  The Pretrial Services Officer, Officer Charnee Alkins, recommended in the Pretrial Services Report that the Defendant be detained because there are no conditions, or combination of conditions, that will reasonably assure the appearance of the Defendant as required in future case proceedings.

### iv.    Nature and Seriousness of the Danger Posed by the Defendant

As detailed previously, the nature and seriousness of the Defendant's criminal history, which includes felony robbery and multiple illegal entries and reentries in relatively quick succession to various places in the United States, presents a clear and significant danger to any

14

person or the community that would be posed by the Defendant's release.

### III.   Electronic Monitoring is Not Sufficient to Ensure the Defendant's Appearance in this Case

In this case, there are no conditions of release that will ensure the Defendant's appearance in this case moving forward.  Amador Lopez's proffer of his mother as a third-party custodian is insufficient for multiple reasons.  First, she works full-time and supports two children, one of whom is a minor.  Second, Pretrial's investigation revealed that she had been previously charged in 2015 with Alien Inadmissibility Under Section 212 of the Immigration and Nationality Act.  While neither Pretrial nor the Government is aware of the disposition of this charge, in the context of a detention analysis, this fact should be considering as weighing against release.

### MOTION TO EXTEND THE STAY OF THE RELEASE ORDER

In consideration of the government's pending motion for review and revocation of the release order, the United States requests that the Court extend the stay of the March 12, 2026 Release Order until further order by this Court, including whatever briefing and hearing schedules the Court may set.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  A court considers four factors in determining whether to stay an appeal:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

15

A continued stay of the release order is appropriate in this case. With respect to the first prong, the evidence demonstrates that the Defendant poses a danger to the community and a serious risk of flight.

With respect to the second prong, the government would be irreparably injured by the absence of a stay. If the stay is not granted, it may hamper the ability of the Government to secure the Defendant's presence for a future hearing on the requested appeal.

With respect to the third prong, there would be little prejudice to the Defendant from this request. The Release Order has already been stayed since March 12, 2026. A short additional stay to permit review by this Court will cause little additional harm to the Defendant.

Finally, with respect to the fourth prong, the public interest favors extending the stay to allow for a thorough review by this Court of the Release Order. There is a public interest in preventing flight of defendants.

Accordingly, the *Nken* factors demonstrate that a stay is warranted and appropriate in this case. For the foregoing reasons, the government requests that the Court exercise its discretion and grant the Government's motion to stay pending further proceedings.

## **CONCLUSION**

For these reasons, the government respectfully moves pursuant to 18 U.S.C. § 3145(a)(1), for *de novo* review and revocation of the March 12, 2026 Release Order issued in this case, and further moves to stay the Release Order pending review by this District Court.

As set forth above, the Government respectfully submits that the Defendant presents a serious risk of flight. Furthermore, the Government respectfully submits that no condition or

combination of conditions will assure the appearance of the Defendant for any court proceedings or the safety of the community.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:    ___/s/_____

Jared M. Beim
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court

using the CM/ECF system, which will send notice to all counsel of record.


_____/s/_____
Jared M. Beim
Assistant United States Attorney