**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:26-CR-00031-RDB** |
| | : | |
| **CARLOS AMADOR LOPEZ,** | : | |
| | : | |
| **Defendant.** | : | |

---

**AMENDED RESPONSE TO GOVERNMENT'S MOTION TO REVIEW AND REVOKE**
**RELEASE ORDER AND ITS MOTION TO STAY PENDING REVIEW**

Defendant Carlos Amador Lopez, through undersigned counsel, opposes the government's motion to revoke the Honorable Charles D. Austin's release order.   Moreover, Mr. Amador Lopez also opposes the government's motion for a continued stay.

**Background Facts**

On Thursday, March 12, 2026, Judge Austin entered an order setting conditions of release for Mr. Amador Lopez.  *See* ECF Dkt. No. 19.  He did so after acknowledging that an ICE detainer remains in place for Mr. Amador Lopez, and so, release from US Marshals custody in this context means a transfer to immigration custody.   Nonetheless, Judge Austin also set conditions that assured Mr. Amador Lopez's appearance at any future proceedings should he obtain release from immigration custody and into the community.  He then granted a stay of his order so that the government could pursue a review with the district court.

Understanding this Court must conduct a *de novo* review and make an independent decision, Mr. Amador Lopez respectfully asserts that the government should not have been permitted to seek detention under 18 U.S.C. § 3142(f)(2), but agrees that the conditions set by

1

Judge Austin are sufficient to address any risk of non-appearance or danger if this Court engages in an analysis under § 3142(g).

**I.    The Government Cannot Show a "Serious Risk" that Mr. Amador Lopez Will Flee if Released from US Marshals Custody, and so, Is Not Entitled to a Detention Hearing under the Bail Reform Act.**

The Bail Reform Act is clear.  It mandates that the government show a "serious risk" that a person will flee when the government moves for detention on grounds not otherwise specified in the act.  *See United States v. Gonzales*, 788 F.Supp. 3d 741, 742 n.2 (D. Md. 2025)(explaining "[t]hat is the threshold question presented...because illegal reentry is not an offense enumerated in 18 U.S.C. § 3142(f)(1)").  If the government makes a showing that a person presents a "serious risk" of flight, the main question then becomes "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id*. at 743 (quoting § 3142(g)).

Here, there is no serious risk that Mr. Amador Lopez will flee if released from US Marshals custody.  The government acknowledges that ICE has placed a detainer on him, and so, upon release from US Marshals custody he would transfer into ICE custody.  *See* ECF No. 17 at 3. Judges in this district have observed that:

> …a defendant "cannot flee if he is in jail, and 'ICE Processing Centers' and 'Detention Centers' are most certainly secure facilities." *United States v. Caballero-Jones*, No. 25-cr-0131-JKB, 2025 WL 1622194, at *1 (D. Md. June 6, 2025); *see also United States v. Kilmar Armando Abrego Garcia*, --- F. Supp. 3d ----, No. 3:25-CR-00115-1, 2025 WL 1727738, at *18 (M.D. Tenn. June 22, 2025) ("In this particular case, the Court finds that the undisputed ICE detainer obviates any serious risk of flight because there is no suggestion that, if Abrego is released, the action taken by the government will be anything other than detaining him in ICE custody pending further removal proceedings.").

*Gonzales*, 788 F.Supp. 3d. at 743-744.

While the government acknowledges the ICE detainer, it nonetheless ignores that fact for the purpose of analyzing whether Mr. Amador Lopez presents a "serious risk" of flight. But a court must not ignore the reality that a criminal defendant placed into ICE custody cannot flee. *Id*. at 744. "It is illogical to ignore the fact that 'release' will mean detention by another federal agency." *Id*. at 745.

On the threshold question, then, of whether Mr. Amador Lopez presents a "serious risk" of flight, the answer is an irrefutable "no." As such, there is no need to proceed with the two-step analysis that the Bail Reform Act otherwise requires. *See United States v. Hernandez-Cerrato*, No. MJM-23-419, 2024 WL 1532748, at *7 (D. Md. Apr. 9, 2024)(relying on *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) to explain that the Bail Reform Act sets forth a two-step process, and proceeding to the second step requires a finding that one of the § 3142(f) factors for holding a detention hearing exists).

    a. When balancing the factors that courts traditionally consider under § 3142(f)(2)(A)—such as an incentive to flee, the ability to flee, prior noncompliance with court orders, or ties to the jurisdiction—Mr. Amador Lopez does not present a "serious risk" of flight.

Judge Austin made careful consideration of the § 3142(f)(2)(A) factors necessary to show a serious risk of flight. The factors he considered were Mr. Amador Lopez's "incentive to flee, ability to flee, prior noncompliance with court orders, ties to the jurisdiction, or other matters that bear on the question of flight." *See Mejias-Mejias*, 771 F.Supp. 3d 688, 691 (D. Md. 2025); *see also*, *United States v. Reymundo*, 792 F.Supp. 3d 612, 619 (D. Md. 2025)(recognizing *Mejias-Mejias* and approving of these factors as the relevant factors under § 3142(f)(2)(A)).

At the hearing on Thursday, Judge Austin noted that an eventual prison sentence gives Mr. Amador Lopez some incentive to flee and that his travel over long distances weighs in the

government's favor.  But he found a lack of compliance with administrative orders a neutral factor. Most crucially, he found Mr. Amador Lopez's ties to Maryland (where his mother and siblings reside, and, where he has lived for eight months) to be in Mr. Amador Lopez's favor.  Given that Mr. Amador Lopez has not used aliases, made efforts to conceal his identity, or has hidden assets, Judge Austin found that he did not present a "serious risk" of flight and that he could set conditions of release.

Given the government's heightened burden to show a "serious risk" of flight at this stage— rather than the mere risk of non-appearance—Judge Austin's balancing of the factors was appropriate.  *See Mejias-Mejias,* 771 F. Supp. 3d at 691.  Even then, reconsideration of these factors favors Mr. Amador Lopez.

Holding that Mr. Amador Lopez has an incentive to flee on account of pending immigration proceedings is speculative and unsupported by statistics showing a ".5% failure to appear rate for alien defendants, as compared with a 1.1-1.6% failure to appear rate for non-alien defendants." *See United States v. Juarez-Vasquez*, No. 25-cr-143-WJM-1, 2025 U.S. Dist. LEXIS 94388, at \*17 n. 7 (D. Co. May 16, 2025). Moreover, prior experience with long-distance travel—in this modern age—is a neutral factor at best.  In the context of migration patterns from Central America, the availability of funds for that travel is more closely correlated with an ongoing presence in the United States.[1]  Finally, while the government makes much hay of non-compliance with an administrative order, Mr. Amador Lopez has never been subject to a court order.  *Contrast* ECF

---

[1] It is common for Latin American migrants from Guatemala, Honduras, and El Salvador to borrow money to travel into the United States—with the hopes that working within the United States will help them pay off those loans.  *See* Catherine E. Shoichet, *Migrants from Three Countries Paid $2.2 Billion Trying to Reach the US.  Most of it Went to Smugglers*, CNN (Nov. 24, 2021, at 9:38 ET), https://www.cnn.com/2021/11/24/us/central-american-migration-costs.

No. 17 at 9 (citing *United States v. Nunez*, No. 4:25-cr-07, 2025 WL 875, at *3 (E. D. Va. Mar. 20, 2025), wherein the defendant had 19 criminal convictions going back to 1993, multiple unlawful entries into the United States, and had previously violated supervised release).

        b.   Judge Austin's specific considerations and balancing of the § 3142(f) factors apply with equal force to the § 3142(g) factors.

Judge Austin noted in the hearing below that the § 3142(f)(2)(A) factors necessary to show a serious risk of flight are duplicative of the § 3142(g) factors. Still, he found it an adequate measure to set conditions of release.

In reaching his conclusions, Judge Austin was mindful of *United States v. Reymundo*, 792 F. Supp. 3d 612 (D. Md. 2025)—a case on which the government heavily relies. In that case, Judge Maddox reversed Judge Austin's order setting conditions of release for Mr. Reymundo. But Judge Austin distinguished Reymundo on the basis that Mr. Lopez has a place to live and someone (his mother) to whom he would be accountable. Notably too, his mother spoke to US Probation and Pretrial Services, and they raised no concern about the adequacy of the home or her serving in a custodial role.[2] The ability of Mr. Amador Lopez to remain on GPS monitoring and home detention tipped the scales in favor of release.

As the government notes, Mr. Amador Lopez has on multiple occasions entered the United States. But he has done so to be nearer to his family and to provide his young daughter with financial support. Courts have recognized these factors as mitigating reasons in the determination of whether someone presents a flight risk. *See United States v. Perez-Hernandez*, No. 25-cr-3168, 2025 WL 3620298, at *6 (S.D. Cal. Oct. 3, 2025)("Although these ties would provide any person

---

[2] US Probation made this representation orally at the hearing.

with strong incentives to stay in this country, Mr. Perez-Hernandez has demonstrated the strength of his resolve to do so by illegally crossing the border into the United States more than once in order to maintain his life here."); *see also*, *Juarez-Vasquez*, 2025 U.S. Dist. LEXIS 94388, at \*16.

While Mr. Amador Lopez may ultimately face some prison time, it is likely nowhere near the 20-year statutory range that the government asserts. Mr. Amador Lopez is facing his first charge of illegal reentry. *See* Modified Pretrial Services Report, US Probation and Pretrial Services (Jan. 23, 2026). His likely Guidelines range is 12 to 18 months;[3] and the average sentence within this district for similarly situated individuals has been ten months over the past five years.[4] Notably, too, Mr. Amador Lopez has already served time countable towards that sentence.

In similar situations, judges within this district have favored release into ICE custody or have set conditions should the defendant later be released. *See Gonzales*, 788 F.Supp. 3d at 741; *United States v. Caballero-Jones,* 1:25-cr-00131-JKB, D. Md. Jun. 6, 2025 (affirming order setting conditions of release); *United States v. Renderos-Chavez,* 8:25-cr-00112-DLB (D. Md. Apr. 21, 2025)(setting conditions of release); *United States v. Coronado-Contreras*, No. 25-cr-00310-JRR (D. Md. Nov. 13, 2025)(affirming order setting conditions of release). As such, Judge Austin's

---

[3] At the hearing, undersigned counsel mistakenly asserted that Mr. Amador Lopez is facing 15-21 months. He is more likely in a lower range, because his previous Nebraska conviction resulted in a sentence of 12-18 months. As such, under USSG § 2L1.2, he is likely facing a Guidelines calculation of:

| | |
|---|---|
| +8 | Base Offense Level for an Illegal Reentry (U.S.S.G. § 2L1.2(a)) |
| +6 | For a conviction resulting in more than one year and one month (U.S.S.G. § 2L1.2(b)(3)(C)) |
| - 2 | Acceptance of Responsibility (U.S.S.G § 3E1.1(a)) |
| 12 | Total Offense Level |
| II | Criminal History Category |

**12 - 18 Months   Guidelines Range**

[4] Interactive Data Analyzer, United States Sentencing Commission, available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard (query within the District of Maryland for application of USSG § 2L1.2, within the past five years, as applied to individuals with a Criminal History Category II).

careful consideration of the individualized facts in Mr. Amador Lopez's case and release order is not an outlier.

**II.    The Government Cannot Meet its Burden Under the Four *Nken*-Factors this Court Must Consider When Deciding Whether to Uphold or Dissolve a Stay.**

Finally, Mr. Amador Lopez objects to the continued stay of this proceeding. A likelihood of success and irreparable injury are the "two factors of the traditional standard [that] are the most critical," in a court's consideration of whether to uphold or dissolve a stay. *See Nken v. Holde*r, 556 U.S. 418, 434 (2009). Here, the government cannot meet its burden on either one. The remaining factors of "harm to the opposing party and weighing the public interest" also militate in favor of dissolving the stay. *Id*. at 435.

Most simply, the government cannot show a likelihood of success because it is not entitled to a detention hearing. *See Gonzales*, 788 F.Supp. 3d at 744-745 (explaining that when individuals are in ICE custody, as Mr. Amador Lopez will be upon release from the US Marshals, there is no serious risk that they will flee within the meaning of the Bail Reform Act). Relatedly, the government cannot show irreparable injury for the obvious reason that Mr. Amador Lopez remains within the custody of the federal government. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) ("It is not appropriate for an Article III judge to resolve Executive Branch turf battles.") (internal citation omitted). Meanwhile, Mr. Amador Lopez and the public suffer while the stay remains in effect. Individuals have avenues of legal recourse within immigration custody that are not available while in US Marshals custody. *See Gonzales*, 788 F.Supp. 3d at 743. And the public is "generally entitled to the prompt execution of orders that the legislature has made final." *See Nken*, 556 U.S. at 427.

For these reasons, Mr. Amador Lopez asks that this Honorable Court dissolve the stay and deny the government's motion seeking revocation of Judge Austin's order setting conditions of release.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____

GABRIEL REYES
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax:  (410) 962-3976
Email: gabriel_reyes@fd.org

## CERTIFICATE OF SERVICE

I, Gabriel Reyes, hereby affirm that this document was filed via ECF, which has notified all parties of record in this matter.

_____/s/_____

GABRIEL REYES
Assistant Federal Public Defender
