IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal Action No. RDB-26-0031 |
| CARLOS AMADOR LOPEZ, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

On January 22, 2026, a federal grand jury sitting in Baltimore returned a one-Count Indictment charging Defendant Carlos Amador Lopez ("Defendant" or "Mr. Amador Lopez") with Reentry of Alien After Aggravated Felony Conviction and Removal in violation of 8 U.S.C. § 1326(b)(2) (Count One).  (ECF No. 1.)  At his initial appearance before Magistrate Judge Aslan of this Court on January 23, 2026, Mr. Amador Lopez consented to detention in the custody of the United States Marshal Service.  He is also subject to an administrative Immigration and Customs Enforcement ("ICE") detainer.[1]  *See* (ECF No. 8). On March 12, 2026, upon Mr. Amador Lopez's request, Magistrate Judge Austin of this Court held a detention hearing in which he carefully considered Mr. Amador Lopez's detention under the Bail Reform Act, 18 U.S.C. §§ 3141–3150.  Following careful consideration of the relevant factors, Judge Austin ordered Mr. Amador Lopez released subject to location monitoring and home detention in the home of his mother.   (ECF No. 19.)  That release order was stayed, however, pending the Government's appeal.

---

[1]  As all parties acknowledged on the record, the pending ICE detainer against Mr. Amador Lopez means that upon any release from U.S. Marshal Service Custody, he would be directly transferred to immigration detention.

Presently pending before this Court is the Government's Motion to Review and Revoke Release Order and Motion to Extend Stay Pending Review (ECF No. 17).  On March 23, 2026, this Court held a motions hearing during which it heard oral argument from both parties.  For the reasons set forth on the record during that hearing and expounded below, the Government's Motion is GRANTED IN PART and DENIED AS MOOT in part.  Specifically, the Motion is DENIED AS MOOT as to the Government's request for a stay[2] and GRANTED as to the Government's Motion to Review and Revoke the Order of Release.  As stated on the record, the Release Order (ECF No. 19) is REVOKED and Defendant shall remain detained pending trial in this matter.  *See* (ECF No. 25).

## BACKGROUND[3]

According to the Government, Defendant Carlos Amador Lopez ("Defendant" or "Mr. Amador Lopez") is a Honduran citizen who has entered the United States without proper documentation at least four times since 2018.  (ECF No. 17 at 2.)  First, at some point before April 25, 2018, he entered the United States without inspection, admission, or parole.  (*Id.*)  On April 25, 2018, the District Court of Douglas County, Nebraska, sentenced him to 12–14 months of incarceration for robbery, with credit for pretrial detention.  (*Id.*)  On May 2, 2018, he was served with a final administrative removal order and, on July 19, 2018, was removed to Honduras.  (*Id.*)  Second, at some point before January 6, 2021, he re-entered the United

---

[2]  All parties agreed on the record at the motions hearing that the request for stay was moot.

[3] As noted below, at a detention hearing, the rules of evidence do not apply, and the Government is permitted to "present information by proffer." *United States v. Vane*, 117 F.4th 244, 249 (4th Cir. 2024) (quoting 18 U.S.C. § 3142(f)).  The Court largely draws its recitation of facts from the Government's proffered factual background, *see* (ECF No. 17), and considers such proffered facts solely for the purposes of evaluating the detention review motion presently at issue.

States without inspection.  (*Id.*)  On January 6, 2021, immigration officials in New Orleans, Louisiana, encountered Mr. Amador Lopez.  (*Id.*)  ICE Enforcement and Removal Operations ("ERO") issued a Notice of Intent/Decision to Reinstate Prior Order, Form I-871, which he acknowledged the same day.  (*Id.*)  He was again removed to Honduras on March 17, 2021. Third, Mr. Amador Lopez re-entered the United States without inspection, admission, or parole, and immigration officials again encountered him in New Orleans, Louisiana on May 29, 2024.  (*Id.*)  ICE ERO issued him a Notice of Intent/Decision to Reinstate a Prior Order, Form I-871, which he acknowledged the same day.  He was removed to Honduras for a third time on June 27, 2024. (*Id.*)

Finally, as relevant to the instant case, Mr. Amador Lopez re-entered the United States, allegedly without permission, and, on December 31, 2025, law enforcement encountered him in Halethorpe, Maryland.  (*Id.*)  He was served with a Form I-871 Notice of Intent to Reinstate a Prior Order of Deportation.  (*Id.* at 3.)  Law enforcement officials obtained his fingerprints the same day and submitted them to law enforcement databases.  (*Id.* at 2.)  On January 7, 2026, Homeland Security Investigations Forensic Laboratory Senior Fingerprint Specialist Stephanie Fox ("Ms. Fox") visually compared Mr. Amador Lopez's fingerprints to those taken during the 2018, 2021, and 2024 arrests described above.  (*Id.* at 3.)  She concluded that the fingerprints belonged to the same individual.  (*Id.*)

On January 22, 2026, a federal grand jury sitting in Baltimore returned a one-Count Indictment charging Mr. Amador Lopez with Reentry of Alien After Aggravated Felony Conviction and Removal, in violation of 8 U.S.C. § 1326(b)(2).  (ECF No. 1.)  Mr. Amador Lopez consented to detention during his initial appearance before Magistrate Judge Aslan on

January 23, 2026. (ECF No. 17 at 2; ECF No. 8.) Since January 2026, he has remained in the custody of the U.S. Marshal Service, although he is also subject to an administrative ICE detainer. (*Id.*) On March 6, 2026, he requested a detention hearing. (*Id.*)

On March 12, 2026, Magistrate Judge Austin held a detention hearing. (*Id.* at 3; ECF No. 18.) At that hearing, Judge Austin stated that it was a "close call" but ordered Mr. Amador Lopez released subject to location monitoring and home detention at his mother's residence, with travel restricted to Maryland. (ECF No. 17 at 4.) Judge Austin acknowledged that, due to the ICE detainer, release from U.S. Marshal Service custody may mean transfer to immigration custody and ordered that Mr. Amador Lopez report to the probation office within 48 hours of release from immigration custody. (ECF No. 21 at 1; ECF No. 19 at 3.) Nevertheless, Judge Austin ruled that release was appropriate because (1) no evidence shows that Mr. Amador Lopez violated judicial—as distinct from administrative—orders; (2) Mr. Amador Lopez has sufficient ties to this jurisdiction; and (3) there is no evidence that Mr. Amador Lopez uses aliases or has engaged in obstruction. (ECF No. 17 at 4.) Judge Austin then stayed his release order until 3:00 p.m. on March 13, 2026, to allow the Government to appeal and ordered that, if the Government timely appealed, the stay would extend until subsequent order of this Court. (ECF No. 17 at 4; ECF No. 19 at 3.)

The Government filed its appeal (ECF No. 17) before 3:00 p.m. on March 13, 2026, such that Judge Austin's stay of the release order was extended pending order of this Court. On March 23, 2026, this Court heard oral argument from both parties at a detention review hearing and, following such argument, granted the Government's Motion (ECF No. 17) to the extent it seeks review and revocation of the release order. *See also* (ECF No. 25).

## STANDARD OF REVIEW

A district court must review a detention or release order *de novo* and "'must make an independent determination' as to pretrial detention or conditions of release." *United States v. Reymundo*, 792 F. Supp. 3d 612, 619 (D. Md. 2025) (quoting *United States v. Gallagher*, Crim. No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020)); *see also United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished). The reviewing district court "must state in writing or orally on the record the reasons for an order regarding a criminal defendant's detention" and "must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, 3145(c)." *Stewart*, 19 F. App'x at 48.

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *Reymundo*, 792 F. Supp. 3d at 618 (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017)). First, under § 3142(f) of the Act, the government may seek pretrial detention where the defendant is charged with specified offenses *or*, as relevant here, "in a case that involves . . . *a serious risk that such person will flee* . . . ." *Id.* (emphasis added) (quoting *Ailon-Ailon*, 875 F.3d at 1336); 18 U.S.C. § 3142(f)(2)(A). Second, if such a condition for a hearing exists, the court must determine whether release or detention is appropriate based upon an individualized evaluation of the factors in § 3142(g) of the Act. *Reymundo*, 792 F. Supp. 3d at 618 (citing *United States v. King*, Crim. No. PJM-22-0366, 2024 WL 1657350, at *2 (D. Md. Apr. 16, 2024)); *see also* 18 U.S.C. §§ 3142(e), (g).

Generally, a court must release a defendant under the "least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the

5

community." 18 U.S.C. § 3142(c)(1)(B).  When considering what, if any, conditions of release

will reasonably ensure the appearance of the defendant and the safety of the community, the

Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See id.* § 3142(g).

## ANALYSIS

Where, as here, the Government seeks detention based on a serious risk of flight and

the absence of conditions of release that could ensure the defendant's appearance in future

proceedings, it must prove these assertions by a preponderance of the evidence.  *Stewart*, 19 F.

App'x at 48.  The Court addresses each step of the Bail Reform Act inquiry in turn.

**I.    Step One: Detention hearing is warranted based on serious risk of flight under 18 U.S.C. § 3142(f)(2).**

To evaluate whether the Government has shown that "it is more likely than not that *a*

*serious risk* of flight exists," courts consider a defendant's (1) incentive to flee; (2) ability to flee;

(3) ties to the jurisdiction and the United States; and (4) reliability and trustworthiness. *United States v. Reymundo*, 792 F. Supp. 3d 612, 619 (D. Md. 2025) (quoting *United States v. Perez-Vasquez*, 779 F. Supp. 3d 248, 256 (N.D.N.Y. 2025)). In this case, the Government contends that all four factors suggest a serious risk of flight. (ECF No. 17 at 7.) In Opposition, Mr. Amador Lopez argues that the ICE detainer lodged against him precludes any risk of flight because he will be immediately transferred into ICE custody upon release. (ECF No. 21 at 2 (citing *United States v. Reyes*, 788 F. Supp. 3d 741, 743–44 (D. Md. 2025).) As explained on the record and elaborated below, the Government has met its burden to demonstrate a serious risk of flight by a preponderance of the evidence.

As an initial matter, the parties heavily dispute the significance of an administrative ICE detainer in the analysis of whether a defendant poses a serious risk of flight justifying a detention hearing. It does not appear that the U.S. Court of Appeals for the Fourth Circuit has squarely addressed whether an ICE detainer is a dispositive or even appropriate consideration when evaluating risk of flight under 18 U.S.C. § 3142(f)(2). As both parties note, the U.S. Court of Appeals for the Ninth Circuit has clarified that "just as an immigration detainer cannot support the categorical denial of bail, neither can an immigration detainer support the categorical grant of bail." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Rather, the Ninth Circuit reasoned that the Bail Reform Act requires an "individualized evaluation" that "does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody." *Id.* Put differently, the Ninth Circuit has held that an ICE detainer is not relevant to any analysis under the Bail Reform Act. *See id.*

7

Judges of this Court have generally treated an immigration detainer as a relevant, but not dispositive, factor in the evaluation of whether a defendant poses a serious risk of flight. In *United States v. Reymundo*, 792 F. Supp. 3d 612 (2025), Judge Maddox of this Court determined that "an immigration detainer is not a proper consideration in deciding whether [the defendant] has the ability to flee" under § 3142(f). *Id.* at 623, 621 (collecting cases). He went on to consider the defendant's immigration detainer to the extent it reflected the likelihood of future deportation. *See id.* at 624 (citing *United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 692 (D. Md. 2025)). Notably, however, this Court has also recognized that reviewing courts should not directly consider whether an administrative detainer will lead to removal by ICE but *should* consider whether any threat of removal creates incentive to flee.[4] *Mejias-Mejias*, 771 F. Supp. 3d at 692. Even where judges of this Court have treated an ICE detainer as a condition dispositive of a serious risk of flight under § 3412(f)(2), they have framed their determination to fall within the district court's discretion under the Bail Reform Act. *See United States v. Reyes*, 788 F. Supp. 3d 741, 745 (D. Md. 2025) (concluding district courts are "within their discretion in a given case to defer a § 3142(g) determination until such time as ICE no longer seeks continued detention"); *see also United States v. Caballero-Jones*, 786 F. Supp. 3d 928, 929 (D. Md. 2025) (treating immigration detention as "a condition of release" that would preclude serious risk of flight but noting that release from immigration custody could trigger

---

[4] Judge Maddox in *Reymundo* declined to directly consider the existence of an ICE detainer, while Judge Austin in *United States v. Mejias-Mejias*, 771 F. Supp. 3d 688 (D. Md. 2025), determined that the existence of an ICE detainer may be relevant to the extent the risk of removal incentivizes flight. Even so, both judges appeared to consider that a risk of involuntary removal incentivizes flight. *Compare Mejias-Mejias*, 771 F. Supp. 3d at 694 (recognizing that "collateral consequence of removal from the United States, pursuant to either a conviction in this case or action on the pending ICE detainer" produces incentive to flee) *and Reymundo*, 792 F. Supp. 3d at 624 ("The likelihood that Mr. Reymundo eventually will be deported again after serving any prison sentence imposed in this case gives him another incentive to flee prosecution.").

additional review of release order).  Taken together, these cases appear to suggest that an ICE detainer is not dispositive under either step of the Bail Reform Act, but such administrative detainer's follow-on effects and consequences may be appropriate considerations in any analysis under the Act.

Significantly, ICE is not permitted to detain individuals indefinitely.  *See, e.g.*, *Reyes*, 788 F. Supp. 3d at 745 (citing *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)); *Caballero-Jones*, 786 F. Supp. 3d at 929 (acknowledging effect of release from ICE detention).  As noted on the record, this Court lacks jurisdiction over the determinations of ICE officials regarding release, detention, or deportation of individuals in ICE custody.  For this reason, this Court declines to treat detention in immigration custody as a condition of release that will ensure Defendant's appearance at future proceedings.  *See, e.g.*, *Reymundo*, 792 F. Supp. 3d at 621.  Instead, this Court treats such detention as a relevant—but not dispositive—factor that, as detailed further below, is somewhat neutral in the factor-based analysis under the Bail Reform Act.

### A.  Incentive to Flee

The Government contends that Mr. Amador Lopez has strong incentive to flee because he faces a fourth deportation, a felony conviction, and a maximum of twenty years of imprisonment if he is convicted of illegal reentry, all of which incentivize flight.  (ECF No. 17 at 9 (citing *Reymundo*, 792 F. Supp. 3d at 624).)  Additionally, it argues that the pending ICE detainer against Mr. Amador Lopez further incentivizes flight to avoid immigration detention and poses a risk of deportation before conclusion of this criminal matter.  (*Id.* at 10.)  In Opposition, Defendant acknowledges that the length of his potential sentence in this case provides some incentive to flee.  (ECF No. 21 at 3.)  He argues, however, that the Court

should not find any incentive to flee based on pending immigration proceedings because alien defendants have a statistically lower non-appearance rate than non-alien defendants. (*Id.* at 4 (citing *United States v. Juarez-Vasquez*, 2025 WL 1424280, at *6 n.7 (D. Colo. May 16, 2025)).) While both parties agree that Mr. Amador Lopez is unlikely to receive a prison sentence as long as 20 years, the risk of potential incarceration for at least several months if not more than a year if found guilty *and* the possibility of deportation upon completion of that sentence present an incentive for Mr. Amador Lopez to flee in this case. *See Reymundo*, 792 F. Supp. 3d at 624; *United States v. Nunez*, Crim. No. 4:25-cr-07, 2025 WL 875803, at *3 (E.D. Va. Mar. 20, 2025) (concluding risk of involuntary removal favors flight risk).

### B. Ability to Flee

Mr. Amador Lopez's ability to flee also favors continued detention. The ICE detainer lodged against him diminishes his ability to flee to the extent he is detained or deported by immigration officials, but ICE is not constitutionally permitted to detain individuals indefinitely. *Reyes*, 788 F. Supp. 3d at 745 (citing *Zadvydas*, 533 U.S. at 682). Moreover, Mr. Amador Lopez's alleged repeated travel into and out of the United States between 2018 and 2025 demonstrates his ability to travel long distances, which tends to suggest a serious risk of flight. *See Caballero-Jones*, 786 F. Supp. 3d at 929 (noting release from ICE custody would justify additional review of release); *United States v. Molina-Orantes*, 798 F. Supp. 3d 1204, 1216 (D. Oregon 2025) (concluding that family in foreign country and "[f]requent and recent foreign travel provide[] concrete evidence of ability to flee"). For this reason, this factor favors concluding that Mr. Amador Lopez presents a serious risk of flight.

### C. Community Ties

The community ties factor is relatively neutral in this case because Mr. Amador Lopez has ties to Maryland significant enough that his mother has agreed to allow him to complete any pre-trial home detention in her home.  (ECF No. 17 at 11.)  Additionally, his sister also lives in Maryland.  (*Id.*)  Nevertheless, Mr. Amador Lopez also has some limited ties to Louisiana, where his infant daughter lives, although he does not have a relationship with the mother of his daughter.  Finally, Mr. Amador Lopez had only lived in Maryland for approximately eight months prior to his arrest in this case.  Such limited residence in Maryland tends to favor a risk of flight, but it is not dispositive.  *Mejias-Mejias*, 771 F. Supp. 3d at 693.  On balance, therefore, this factor suggests that Mr. Amador Lopez has some ties to Maryland and Louisiana but has most recently lived in Maryland.  Thus, this factor is neutral in this case.

### D. Reliability and Trustworthiness

Finally, Mr. Amador Lopez's personal history and repeated re-entry into the United States in violation of administrative orders suggests a serious risk of flight.  As noted on the record, Mr. Amador Lopez allegedly has (1) entered the United States without proper documentation or permission four times and (2) illegally re-entered the United States three times.  Despite numerous unpermitted entries into the United States since 2018, Mr. Amador Lopez has not sought asylum, relief under the Convention Against Torture ("CAT"), or any other form of immigration protection.  *Compare* (ECF No. 17 at 12–13 (noting Mr. Amador Lopez has not sought any form of immigration relief) *with United States v. Mejias-Mejias*, 771 F. Supp. 3d at 691 (noting defendant was subject to ongoing immigration proceedings based on pending asylum petition) *and United States v. Hernandez Cerrato*, Crim. No. MJM-23-419, 2024

WL 1329296, at *2 (D. Md. Mar. 28, 2024) (noting defendant was subject to ongoing immigration proceedings based on pending petition for relief under CAT).

Although Mr. Amador Lopez emphasizes that he has not used aliases, hidden assets, attempted to conceal his identity, or failed to comply with *judicial* orders, his failure to comply with prior administrative orders tends to suggest that he lacks reliability and presents a serious risk of flight. Prior noncompliance with criminal proceedings, judicial supervision, or judicial orders suggest unreliability or untrustworthiness. *Mejias-Mejias*, 771 F. Supp. 3d at 693. Many district courts have further recognized that noncompliance with administrative orders may indicate a risk of flight. *See, e.g.*, *United States v. Santos*, No. CR-26-00035-JD, 2026 WL 396549, at *2 (W.D. Okla. Feb. 11, 2026) (prior illegal re-entries indicative of disregard for governmental authority); *Molina-Orantes*, 798 F. Supp. 3d at 1218 (treating prior illegal re-entry as "example of a failure to respect the law or court order"); *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1144 (D. Idaho 2023) ("Multiple illegal reentries after removal demonstrate greater disrespect for court orders and the law."). On balance, therefore, the Government has shown that Mr. Amador Lopez has ability and incentive to flee, limited but not insignificant ties to Maryland, and, though his repeated unpermitted entries into the country may show interest in remaining in the United States, his repeated violation of removal orders suggests that he can not be relied upon or trusted to observe judicial orders. The Government has met its burden to show that it is more likely than not that Mr. Amador Lopez presents a serious risk of flight. *See Reymundo*, 792 F. Supp. 3d at 619.

II.    **Step Two: Under the factors enumerated in 18 U.S.C. § 3142(g), Mr. Amador Lopez presents a serious risk of flight and no set of circumstances can ensure his appearance at future proceedings in this case**

Under the second step of the Bail Reform Act analysis, the Government bears the burden to establish by a preponderance of the evidence that no set of circumstances could protect the community and ensure Mr. Amador Lopez's appearance at future proceedings in this case. *Stewart*, 19 F. App'x at 48. In assessing this inquiry, the Court must independently consider each § 3142(g) factor and, if possible, release the defendant under the "least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The relevant factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of danger to any person or to the community should a defendant be released. *Id.* § 3142(g).

Courts within the Fourth Circuit have concluded that defendants charged with illegal re-entry often face a shorter sentence, which favors release. *See, e.g.*, *United States v. Vasquez-Robles*, No. 2:25-mj-55, 2025 WL 1090884, at *4 (E.D. Va. Apr. 7, 2025); *Mejias-Mejias*, 771 F. Supp. 3d at 694 (noting longer sentence is associated with higher incentive to flee). As both parties agree, Mr. Amador Lopez is unlikely to receive the maximum twenty-year sentence, and defense counsel calculates that his likely Guidelines range will be closer to 12–18 months of incarceration. (ECF No. 21 at 6 & n.3.)

The weight of the evidence, however, favors detention in this case. The Government has proffered that it will offer fingerprint evidence confirming that Mr. Amador Lopez is in

the United States without documentation despite several previous removals, including his removal following a state conviction for robbery. Where, as here, the Government has provided evidence tending to establish each element of illegal reentry, this Court has concluded that the weight of the evidence favors detention. *See Reymundo*, 792 F. Supp. 3d at 624. Thus, this factor favors continued detention.

Mr. Amador Lopez's history and characteristics, including his character, mental and physical condition, family and community ties, length of residence in the community, and criminal record also tend to favor continued detention in this case. The Government has proffered that Mr. Amador Lopez has repeatedly entered and re-entered the United States without permission or parole, including after his initial removal following a state felony conviction. Additionally, the Pretrial Services Officer previously declined to recommend Mr. Amador Lopez's release. As Mr. Amador Lopez emphasizes, however, his motivation to enter the United States to provide his daughter financial support tends to mitigate his flight risk. (ECF No. 21 at 5); *see, e.g.*, *United States v. Perez-Hernandez*, 806 F. Supp. 3d 1144, 1155 (S.D. Cal. 2025); *Juarez-Vasquez*, 2025 WL 1424280, at *6–7.

Quite simply, his repeated violation of administrative orders related to his removal from the United States strongly indicates a risk of flight. Courts have consistently recognized that repeated violation of administrative orders and prior instances of illegal reentry into the United States weigh in favor of detention. *See, e.g.*, *Reymundo*, 792 F. Supp. 3d at 627 (suggesting prior instances of illegal reentry or entry without permission favor detention); *Santos*, 2026 WL 396549, at *2 (considering prior illegal re-entries after removal indicative of pattern of disregard for governmental authority); *Molina-Orantes*, 798 F. Supp. 3d at 1218 (treating prior

14

illegal re-entry after removal as "example of a failure to respect the law or court order" for purposes of reliability and trustworthiness analysis); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144 ("Multiple illegal reentries after removal demonstrate greater disrespect for court orders and the law."). Based on the Government's proffer regarding the number of times that Mr. Amador Lopez has violated administrative orders and re-entered the United States, this Court is not persuaded that home detention and location monitoring would prevent flight and ensure his appearance at future proceedings in this case.[5] Given Mr. Amador Lopez's significant alleged record of repeatedly violating administrative orders, there is significant risk of flight and non-appearance at future proceedings. Accordingly, Mr. Amador Lopez's personal history and characteristics favor detention.

Finally, the nature and seriousness of the danger to any person in this case is relatively neutral. The only clear indication of any danger to the community appears to be Mr. Amador Lopez's 2018 state conviction in Nebraska for the felony of aggravated robbery. *See, e.g.*, *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *8 (E.D. Ky. Mar. 5, 2025) (concluding severe prior offense for intoxicated driving resulting in death favored detention); *Reymundo*, 792 F. Supp. 3d at 627–28 (suggesting prior felony conviction and prior instances of illegal re-entry favor detention). This prior offense tends to favor detention based on danger, but, as the Court noted on the record, the conviction is from 2018 and no other evidence in the record appears to support any such danger. Thus, this factor is neutral. On balance, the § 3142(g) factors favor continued detention because Mr. Amador

---

[5] Indeed, as the Government noted on the record, Mr. Amador Lopez's mother works full-time and has a minor child under her care, which likely disrupts or complicates her assumption of custodial responsibility of defendant during any pre-trial home detention.

15

Lopez presents a serious risk of flight, and no conditions of release can ensure his appearance at future proceedings in this case.

## CONCLUSION

For the reasons stated on the record at the hearing of March 23, 2026, and expounded above, it is this 25th day of March 2026 hereby ORDERED that:

1. The Government's Motion to Review and Revoke Detention Order and Stay Release Order (ECF No. 17) is GRANTED IN PART and DENIED AS MOOT in part;

2. Specifically, the Government's Motion is GRANTED to the extent it seeks review and revocation of the release order (ECF No. 19);

3. The release order (ECF No. 19) is REVOKED, and Defendant shall remain detained pending trial in this matter; and,

4. The Government's Motion is DENIED AS MOOT to the extent it seeks a continued stay of the release order.

/s/
_____
Richard D. Bennett
United States Senior District Judge

16